```
IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT
----------------------------------------
Kevin Smalls,                                        AMENDED
                    Plaintiff,                       COMPLAINT


            V.
                                              CIVIL ACTION NO.
                                              12 Civ. 5581(VB)
Officer Michael Balicki,
Sergeant Christopher Pasquale,                JURY TRIAL DEMANDED
                    Defendants,
----------------------------------------
```

## I. COMPLAINT

Plaintiff, Kevin Smalls, Pro Se for the complaint stated as follow:

## II. PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Kevin Smalls, was confined at Riker's Island in the City of New York in the State of New York from September 7th., 2011. Plaintiff is currently confined at Mohawk Correctional Facility, 6100 School Road, P.O.Box 8451, Rome New York 13442-8451 on other matters.

2.      Plaintiff, Kevin Smalls, is and at all relevant times mentioned here in, an adult citizen of the United States and a resident of the State of New York.

3.      Defendant, Michael Balicki was at all relevant times herein an officer employed for the New York City police Department.

4.      Defendant, Christopher Pasquale, was at all relevant times herein a Sergeant employed for the New York City Police Department.



5.   This action arises under and is brought pursuant to 42 U.S.C. Section 1983 to remedy the deprivation, under color of state law of rights guaranteed by the Fourth Amendment to the United States Constitution, This Court has jurisdiction over the action pursuant to 28 U.S.C. Section 1331 and 1342.

6.   This cause of action arose in the Southern District of New York therefore, venue is proper under 28 U.S.C. Section 1391(b).

### III. PREVIOUS LAW SUITS

7.   Plaintiff has filed no other law suit dealing with the same facts involved in this action or otherwise relating to this conspiracy claim, false arrest claim, or malicious prosecution claim.

### IV. STATEMENT OF CLAIM

8.   At all relevant times herein, the defendants "were" persons for purpose of 42 U.S.C. Section 1983 and acted under color of law to deprive plaintiff of his Constitutional Rights as set forth more fully below.

### CAUSE OF ACTION

9.   The nature of this claim herein is for conspiracy, false arrest, and malicious prosecution and destruction of personal studio equipment.

10.  On or about August 17th., 2011 the plaintiff was involved in a confrontation with the defendant's informant name herein as Carlos who the plaintiff knew for over two decades, for he was engaged to the plaintiff's bestfriend sister Speedy Martinez.

11.     A rumor had surfaced within the community ~~which~~ WITH the plaintiff and the informant Carlos ~~is~~ which cited him (Carlos) as being an informant empolyed for the NYPD.

12.     And because of the fact that the informant Carlos knew the plaintiff and was aware that the plaintiff was incarcerated back in 1994 with an individual from out of the "same" neighborhood that he sent to prison back then on a robbery charge, said informant asumed that the plaintiff had started said rumor in a ploy to destroy him.

13.     So on August 17th., 2011, informant Carlos had approached the plaintiff on the corner of 156st. and Fox (in the Bronx) about said rumor and a confrontation had ensued.

14.     During said confrontation, the informant Carlos had blatantly threaten to utilize his resources at the Police Department to sent the plaintiff back to prison for commencing said rumor, and done so in the present of plaintiff's Ex-girlfriend.

15.     Ironically, on the morning of September 7th., 2011 at approximately 4:30 a.m. while the **plaintiff** was at his girlfriends residence, the defendants Michael Balicki, Christopher Pasquala, and other members of NYPD came crashing into said residence unannounce with their guns drawn and "immediately" arrestde the plaintiff and everybody in the apartment.

16.     While confined in the holding pen in the 41st. Precinct in the Bronx a distructive search of the apartment was conducted outside of the presents of

the plaintiff, and everybody else that been arrested and we were all suddenly charge with the following:

-Penal Law Section, 220.16 sub. 1 Crim. Poss. of a Contr. Sub.
-Penal Law Section, 220.16, Crim. Poss. Contr. Sub. in the 3rd.
-Penal Law Section, 220.03, Crim. Poss. Contr. in the 7th. degree.
-Penal Law Section, 220.50, Crim. Use of Drug Para. Su. 2nd. degree.
-Penal Law Section, 221.05, Unlawful Poss. of Mar. (violation)
-General Violation of Local Law, (Class U Misd.)

17. While at said Precinct, defendant Christopher Pasquale took the plaintiff into a secluded office where said defendant and Michael Balicki had commenced to question the plaintiff about numerous homicides that occurred through the community, alleging that in good faith if the plaintiff cooperate that they will release the plaintiff's family.

18. But because the plaintiff gave no favorable answer, the defendant Michael Balicki became exasperated and commenced to question the plaintiff about the confrontation he was involved with over the summer.

19. It was then that the plaintiff began to "realize" that the defendants were infact referring to the confrontation the plaintiff had with the informant Carlos, thuswise confirming the fact that said informant had indeed succeeded in executing his intentions of sending the plaintiff "back" to prison illegally for allegedly commencing said rumor, and was infact conspiring to do so with the defendants, for they were able to elaborate on a isolated situation between the informant, the plaintiff, and the plaintiff's Ex-girlfriend which is now apparent that the defendants and the informant were attempting to penalize the plaintiff for said rumor, which placed the informant IN HARMS WAY

and most definitely jeopardizes future investigations in the naeighborhood which the informant Carlos is employed to seek information from for the defendants. (Emphasis Added)

20. As a direct result of this frivilous arrest with malicious intent, the defendants had traveled beyond the realms of any legal search warrant and intentionally distroyed the apartment as a form of retaliation and stomped out personal items and the following studio equipment. (also see Exhibits A through E.)

### STUDIO EQUIPMENT

| | |
|---|---|
| -An Akai M.P.C. 4000 sampler machine with C.D./burner | $3,200.00 |
| -A Roland X7 Phantom workstation keyboard, | $3,000.00 |
| -A Yamaha Motif workstation keyboard, | $3,500.00 |
| -A Apple Macbook labtop with custom color, | $1,000.00 |
| -A Pair of XB speaker monitors, | $500.00 |

21. As of May 31st. 2012, the plaintiff received a favorable disposition in the case and "all" the charges were subsequently dismissed.

22. The defendants were all malicious with their intention herein to conspire with the confidential informant to silence the plaintiff by way of an "illegal" arrest for commencing said rumor which became personal and most "definitely" REFLECTED in the damage of plaintiff's studio equipment and the destruction of the apartment. (see Exhibits A through E)

23. It is now clear that in order for the defendants to succeed in their endeavors of strategically trapping the plaintiff into a illegal arrest, a fictionous sale of a control substance had to have been a part of an existing affidavit in order for the defendants to have entered the resid-

ence, and the location of the defendants Ex-girlfriends apartment had to be provide to the defendants by the informant. And "both" defendants were aware of this ploy to arrest the plaintiff illegally, because the information thats been furnished by the informant was more than the fabricated drug sale, it was also based on the confrontation to compel the defendant Michael Balicki to comment on the confrontation during question which I'm sure did not become apart of the statement handed to a magistrate to secure a warrant. (emphasis added)

24.  Furthermore, even if the defendants dare to have alleged that perhaps the informant came to door of said residence to purchase an illegal substance from the plaintiff to secure a warrant as the defendants observed, this to would be a complete fabrication an impossible. (see Exhibit-F)

25.  Because the front door to the apartment in question sits "solely" in the corner on the second floor with a cement wall to the immediate left and the upper level staircase to the immediate right of the door granting "zero" visibility to anyone other than THE PERSON standing directly in front of the door. And considering the fact that the plaintiff was aware of the informants history with the authorities previously from past experience, it would have been suicide to conduct such business with a known snitch at a residence where the plaintiff use to sometimes rest his head. Furthermore, the informant could not even come to said residence or anywhere else with a unknown individual because of the snitch label he possess.(emphasis added)

26.  Most importantly, if a warrant does exist in this herein and their's an affiant's statement attached and it reflects the possibility of an allege drug sale from said residence between the informant and plaintiff, then a prudent thinking mind with commonsense would want to know "why" wasn't the

plaintiff initially charged with the violation of Penal Law Section 220.39 (Criminal Sale of a Control Substance)

27. At the above mentioned date, time, and place, and upon entering said premises, the defendants seized the plaintiff and intentionally damaged the residence and personal studio equipment, and brought him against his will to the 41st. Precinct over his protest where he was unlawfully imprisoned and detained under the directions of the defendants, all without probable cause. and the fact that Sergeant Chistopher Pasquale was the suporvisor over said search of the residence and allowed NYPD to do such damage makes his liable.

28. At the above mentioned date, time and place solely due to the actions of the defendants herein, the plaintiff was unlawfully seized from said residence and imprisoned without a valid arrest warrant and without prabable cause.

29. The acts of the defendants herein were done with the purpose and intent of depriving the plaintiff of his protect rights to be free from unreasonable seizure secured to him by the Fourth Amendment to the United States Constitution and his rights not to be deprived of liberty without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

30. that solely as a result of the defendants herein, plaintiff sustained serious injuries and personal lost and suffered mental anguish.

31. That solely as a result of the defendants action, plaintiff sustained damages in the amount of $150,000.00.

## SECOND CAUSE OF ACTION

32. That the plaintiff repeats and reiterates each and every allegation contained in paragraphs 1-30 of the complaint as if more fully set forth at length herein.

33. The acts, conduct, and behavior of the defendants were performed knowingly, and maliciously, by reason of which plaintiff is entitled to punitive damages in the sum of $350,000.00.

WHEREFORE, the plaintiff demamds a judgment against the defendants here in the amount of $150,000.00 in the first cause of action and $350,000.00 in the second cause of action together with the cost of this action and such other and further relief as this court may deem proper.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:   November 14th., 2012.

*Kevin Smalls*
Kevin Smalls, Pro Se

EXHIBIT "A1" SHOWS HOW THE DEFENDANTS BROKE IN HALF THE PLAINTIFF'S LAPTOP INTENTIONALLY. EXHIBIT "A-2" SHOWS HOW THE DEFENDANTS BROKE PLAINTIFF MOTIFF WORKSTATION AND DESTROYED THE ROOM COMPLETELY.



As you could tell from Exhibit B 3, the defendants intentionally stomped on the screen of the I-Pod in vengeance to the plaintiff as explained in complaint which is not authorized by any warrant. Exhibit "B 4" shows the defendants broke up plaintiff's M.P.C. 4000.

3:



4:



EXHIBIT = B

EXHIBIT "C5" SHOWS HOW THE DEFENDANTS BROKE THE PLAINTIFF'S ROLAND PHANTOM WORKSTATION IN HALF AND ONE HALF IS LEANING AGAINST THE WALL WHERE THE ARROW IS POINTING. EXHIBIT "C6" SHOWS HOW ANOTHER ROOM HAS BEEN VIOLATED.

5:


EXHIBIT: C

6:


EXHIBIT D7 SHOWS ANOTHER VIEW OF THE PLAINTIFF'S PHANTOM WORKSTATION BROKE AGAINST THE WALL IN RIGHT HAND CORNER WHERE THE ARROW IS POINTING.



7:

8:

EXHIBIT: D

EXHIBITS "E9" AND "E10" SHOWS HOW THE DEFENDANTS DESTROYED THE BATHROOM AND KITCHEN SIMPLY BECAUSE OF CONSPIRACY MENTIONED IN COMPLAINT.

**9:**


**EXHIBIT: E**

**10:**


